**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shah Sahak, | No. CV-19-05347-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| New NGC Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant New NGC, Inc.'s ("Defendant") Motion for Summary Judgment. (Doc. 43.) For the following reasons, Defendant's Motion is granted in part and denied in part.[1]

## BACKGROUND

Plaintiff Shah Sahak ("Plaintiff"), an Afghani and Muslim, is a former employee of Defendant. (Doc. 48 ¶ 109.) For about 17 years, Plaintiff held the position of Third Shift Foreman/Production Supervisor 1. *Id.* ¶ 110. Beginning in 2013, Plaintiff began requesting a transfer to the First Shift for personal reasons. *Id.* ¶ 111. This request went unfulfilled until 2018. In 2018, Defendant created the position of Plant Planner. *Id.* ¶ 27. Plaintiff and another Foreman, Romeo Zagrean, a Romanian and non-Muslim, expressed interest in the position. *Id.* ¶¶ 28, 108. Defendant selected Plaintiff for the position over

---

[1] Defendant requested oral argument. That request is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Zagrean. *Id.* ¶ 29.  Defendant also moved Zagrean to First Shift in July 2018.  *Id.* ¶ 70.

Defendant's Plant Management eventually became concerned about Plaintiff's performance as a Plant Planner. *Id.* ¶ 40.  On August 17, 2018, Plant Manager Tom Griffith and Plaintiff's supervisor Robert Piercy presented Plaintiff with a 30-day performance review. *Id.* ¶ 155.  The review outlined some of Plaintiff's performance issues.  *Id.* ¶ 48. Following the meeting, Plaintiff worked one shift and then called in sick. *Id.* ¶ 55.  Plaintiff did not physically return to the office after this point.  *Id.*

On August 24, 2018, Plaintiff complained, in writing, to Defendant about actions taken against him that he believed were because of his ethnicity and religious background. *Id.* ¶ 157.  Defendant also filed a charge of discrimination with the Arizona Attorney General's Office, Civil Rights Division and the Equal Employment and Opportunity Commission ("EEOC"), alleging discrimination based on national origin and religion. (Doc. 44–3, Ex. 22.)   After not getting his desired response to his internal complaint, Plaintiff advised Defendant of his intent to resign on December 17, 2018.  (Doc. 48 ¶ 162.)

## DISCUSSION

### I.    Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

1    *Celotex*, 477 U.S. at 323.  Parties opposing summary judgment are required to "cit[e] to

2    particular parts of materials in the record" establishing a genuine dispute or "show[ ] that

3    the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P.

4    56(c)(1).  A district court has no independent duty "to scour the record in search of a

5    genuine issue of triable fact[.]"  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

6    ## II.    Analysis

7    ### A. Disparate Treatment

8    An employer may not "discriminate against any individual with respect to his

9    compensation, terms, conditions, or privileges of employment, because of such

10   individual's . . . religion . . . or national origin."  42 U.S.C. § 2000e–2(a)(1).  A plaintiff

11   must establish a prima facie case of discrimination, offering proof that: (1) "the plaintiff

12   belongs to a class of persons protected by Title VII;" (2) "the plaintiff performed his or her

13   job satisfactorily;" (3) "the plaintiff suffered an adverse employment action;" and (4) "the

14   plaintiff's employer treated the plaintiff differently than a similarly situated employee who

15   does not belong to the same protected class as the plaintiff."  *Cornwell v. Electra Cent.*

16   *Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v.*

17   *Green*, 411 U.S. 792, 802 (1973)).  Once the plaintiff has established a prima facie case,

18   the defendant must rebut the presumption of discrimination by "articulat[ing] some

19   legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*,

20   411 U.S. at 802.  If the defendant provides such evidence, the *McDonnell Douglas*

21   presumption "simply drops out of the picture" and "the trier of fact proceeds to decide the

22   ultimate question: whether plaintiff has proven 'that the defendant intentionally

23   discriminated against [him]' because of his [protected class]."  *St. Mary's Honor Ctr. v.*

24   *Hicks*, 509 U.S. 502, 511 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S.

25   248, 253 (1981)).  At this point, plaintiffs must "be afforded a fair opportunity to show that

26   [defendant's] stated reason for [plaintiff's] rejection was in fact pretext."  *McDonnell*

27   *Douglas*, 411 U.S. at 804.

28   A plaintiff may respond to a summary judgment motion by "using the *McDonnell*

*Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). But "it is not particularly significant whether [a plaintiff] relies on the *McDonnell Douglas* presumption, or whether he relies on direct or circumstantial evidence of discriminatory intent;" either way, the plaintiff must produce some evidence suggesting that the defendant's adverse employment action was "due in part or whole to discriminatory intent." *Id.* at 1123.

### 1. McDonnell Douglas

Plaintiff fails to show that he was performing his job satisfactorily. The evidence shows that beginning in 2014 Plaintiff began receiving ratings of "Inconsistently Meets Expectations" on his performance evaluations. *See* (Doc. 44–6 at 2–4.) In his 2018 supervisor review, Plaintiff received ratings of "Needs improvement" in four of the five competencies evaluated, including attendance, job skills, communication, and teamwork. (Doc. 44–3, Ex. 9.) The evidence also shows other instances of Plaintiff not performing his job satisfactorily, including when Plaintiff failed to enter production and prevented the whole Plant's production for that month from being entered. (Doc. 44–6 at 4.) In rebuttal, Plaintiff contends that he did not perform poorly and that any performance shortcomings are due to a lack of support. (Doc. 47 at 12.) However, "[a]n employee's self-assessment of his performance, though relevant, is not enough on its own to raise a genuine issue of material fact." *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1003 (9th Cir. 2019). Additionally, Plaintiff does not cite to admissible evidence to make this dispute. Accordingly, Plaintiff fails to establish a prima facie case of discrimination under the *McDonnell Douglas* framework.

### 2. Direct Evidence or Circumstantial Evidence

Plaintiff also fails to establish a prima facie case through direct or circumstantial evidence. First, Plaintiff argues Defendant's favorable treatment of Zagrean, as compared to Plaintiff, demonstrates discriminatory intent. (Doc. 47 at 10, 17.) Plaintiff asserts that

Defendant's failure to respond to Plaintiff's complaints, its decision to give Plaintiff the role of Plant Planner and Zagrean the role of day shift supervisor, and its provision of a higher salary and more opportunities for overtime to Zagrean show that Defendant treated Zagrean more favorably.  *Id.*  Although it is possible Defendant treated Zagrean more favorably, Plaintiff fails to connect this favorable treatment to discriminatory intent. Instead, Plaintiff acknowledges in his statement of facts that Zagrean generally performed his job duties better than Plaintiff.  (Doc. 48 ¶¶ 132–33.)  Accordingly, these facts fail to show that Defendant was motivated in part or whole by discriminatory intent.

Second, Plaintiff asserts that admissions made by Tom Griffith "constitute circumstantial evidence that Defendant preferred employees who could communicate well in English and who were not Muslim."  (Doc. 47 at 15.)  In his deposition, Griffith stated that Plaintiff's "communication needed improvement" because "when he was a foreman, on how things would - - we send stuff down, whether it be corporate or plant, as far as items that need to be addressed or looked at or handled, and those items at times were not pushed across to, you know, his shift."  (Doc. 48, Ex. 2 at 56.)  Griffith also stated that Zagrean performed better than Plaintiff.  *Id.*, Ex. 2 at 55.  These admissions do not provide any indication that Defendant preferred employees who were not Muslim.

As Plaintiff fails to establish a prima facie case through direct or circumstantial evidence or the *McDonnell Douglas* framework, Plaintiff's disparate treatment claim is dismissed.

**B.  Hostile Work Environment**

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."  *Green v. Los Angeles Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989).  In determining whether an allegation is like or reasonably related to the allegations in an EEOC charge, courts consider factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, [ ] any locations at which

discrimination is alleged to have occurred[,]" and whether the plaintiff's "claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). Courts are to construe the language in an EEOC charge with "utmost liberality." *Id.*

In his EEOC charge, Plaintiff reported that the cause of his discrimination was based on his religion, Islam, and his national origin, Afghani, and that he was "denied a promotion and subjected to unequal treatment and harassment." (Doc. 44–3, Ex. 22.) Plaintiff stated that the discrimination took place between July 2018 and August 17, 2018 and checked the box for "Continuing Action." *Id.* Plaintiff also specifically alleged the following:

> A. In or about November 14, 1994, Respondent hired me for the position of Operator. My current position title is SAP Operator/Planner. Respondent is aware that I am Afghani and my religion is Islam.

> B. For many years I worked the night shift. Since 2013, due to health reasons I requested to transfer to day shift. I was always informed that there was no position open to which I could transfer.

> C. In or about March 2018, Respondent finally reassigned me to day shift. Romeo Zagrean (Romanian, non-Muslim) was assigned to the night shift position I vacated.

> D. Since my reassignment to day shift, H.R. Manager, Wendy Self has constantly screamed at me, falsified documents related to my work and accused me of not doing my job.

> E. In or around July 2018, Respondent created a day shift management position for which I am well qualified. Respondent did not post the position, denying myself and any other qualified employees the opportunity to apply. Instead, Respondent gave the position to Mr. Zagrean. Mr. Zagrean has approximately 3 years of Production Management experience whereas I have approximately 18 years of experience managing the night shift.

> F. On or about August 17, 2018, Superintendent, Robert Piercy and Plant Manager, Tom Griffith escorted me from my office, one on each side of me, walking just behind me. I have never

seen anyone treated like this going for their review. They
gave me a completely negative 30 day, "new hire" evaluation.
Mr. Piercy raised his voice during the evaluation, and both
Mr. Piercy and Mr. Griffith consistently pressured me to
agree with them and sign the review. I did not sign the review
because I did not agree with it.

G. I believe and therefore allege Respondent failed to promote
me to the day shift manager position and gave me a negative
performance evaluation because of my national origin,
Afghani and religion, Islam.

*Id.*

Defendant contends that most of the allegations that make up Plaintiff's hostile work environment claim are not administratively exhausted because they were not alleged in the EEOC charge. (Doc. 49 at 9.)  Plaintiff alleges that the following demonstrate a hostile work environment: (1) regular racial slurs in the workplace; (2) Defendant's provision of more favorable shifts and higher wage increases to Zagrean; (3) Defendant's refusal to transfer Plaintiff to his requested position but allowing Zagrean to transfer; (4) Defendant's failure to support Plaintiff in the Plant Planner role; (5) Defendant's failure to meaningfully investigate Plaintiff's complaints prior to and after his August 24, 2018 complaint; and (6) Defendant's failure to respond to Plaintiff's notice of intent to resign.  (Doc. 47 at 16.) The Court will only address whether Plaintiff's allegations of slurs in the workplace are administratively exhausted as the other hostile work environment allegations, as explained below, do not raise a triable issue.

In his deposition, Plaintiff stated that Zagrean and Piercy made slurs about Muslims and Afghanis.  (Doc. 48 ¶¶ 119–20.)  Piercy's alleged slurs are reasonably related to the EEOC charge because Piercy is named in the charge and Plaintiff alleges that Piercy, along with Griffith, gave a negative performance evaluation because of Plaintiff's national origin and religion.  As Plaintiff alleges that Piercy acted with discriminatory intent, an EEOC investigation could reasonably be expected to focus on evidence of Piercy's discriminatory views, including past comments.  Zagrean's alleged slurs, however, are not reasonably

related to the EEOC charge.  Although the charge names Zagrean, there is nothing in the charge to indicate that Zagrean made inappropriate comments or held discriminatory views.  That Plaintiff generally alleges in his EEOC charge that he faced harassment is not enough for Zagrean's comments to be reasonably related to the charge.  *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 638 (9th Cir. 2002) (finding a plaintiff's "cursory reference to 'racial and sexual discrimination'" in his EEOC charge to not be enough to bring in other instances of racial discrimination not closely related to the factual allegations in the charge).[2]

Although Piercy's comments are not barred on administrative exhaustion grounds, it is not clear whether any of Piercy's comments were made during the statutory period. In deferral states, like Arizona, a charge must be brought within 300 days of the occurrence of the alleged unlawful employment practice.  42 U.S.C. 2000e-5(e)(1).  "A charge alleging a hostile work environment claim . . . will not be time barred as long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

Here, Plaintiff filed his EEOC charge on December 13, 2018.  (Doc. 44–3, Ex. 22.) In his deposition, Plaintiff stated that Piercy did not make any inappropriate comments when he began his Plant Planner position.  (Doc. 44–2 at 236.)  Although Plaintiff's exact starting date as a Plant Planner is not clear, Plaintiff's EEOC charge indicates that he began the position in or around March 2018.  In the two years prior to starting the Plant Planner position, Plaintiff stated that Piercy did not make inappropriate comments every day but that sometimes such comments would come up in conversation.  *Id.*  These facts do not establish whether the alleged inappropriate comments ended before or after the beginning of the 300-day statutory period.  Therefore, whether Piercy's comments are barred by the statute of limitations is a genuine dispute of material fact.  As Piercy's alleged slurs, as

---

[2]   In its statement of facts, Defendant mentions other slurs allegedly made by other employees.  (Doc. 44 ¶¶ 88–102.)  It is not clear whether Plaintiff intends to rely on those slurs for his hostile work environment claim.  To the extent that Plaintiff does, those slurs cannot be considered for the same reason as Zagrean's comments.

stated in Plaintiff's deposition, are sufficient to state a triable claim for hostile work environment, Plaintiff's hostile work environment claim remains to the extent it is based on Piercy's comments.

Plaintiff's hostile work environment claim is dismissed to the extent it is based on Defendant's treatment of Zagrean, failure to support Plaintiff in his Plant Planner role, lack of investigation of his complaints, and Defendant's failure to respond to his notice of intent to resign.  To state a claim for hostile work environment, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct because of his national origin [and/or religion]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (internal citations and quotations omitted).  As Plaintiff fails to show that these events occurred because of his national origin or religion, Plaintiff cannot rely on these events to support his hostile work environment claim.  *See, e.g.*, *Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1057–58 (D. Haw. 2015) (dismissing a hostile work environment claim where the defendant's statements could not be linked to the plaintiff's race).

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED** in part and **DENIED** in part as follows:

1. Plaintiff's disparate treatment claim is dismissed.

2. Plaintiff's hostile work environment claim remains to the extent it is based on Piercy's comments.

Dated this 6th day of May, 2021.

*G. Murray Snow*

G. Murray Snow
Chief United States District Judge

- 9 -